# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| A N N A   C A T H E R I N E THOMPSON, | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | Civil Action No. 3:12-CV-01686-CLS |
| vs. | ) | |
| | ) | |
| CITY OF MUSCLE SHOALS, ALABAMA, *et. al.*, | ) | |
| | ) | |
| | ) | |
| **Defendants.** | | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Anna Catherine Thompson, alleges that defendants committed acts of pregnancy-based employment discrimination, and asserts multiple causes of action under federal employment discrimination statutes and state tort law.[1]  Specifically, plaintiff's federal claims include pregnancy discrimination, retaliation, and hostile work environment claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, as well as interference with her rights under the Family and Medical Leave Act of 1993, 29 U.S.C. 2601 *et seq.* (FMLA).[2]  Plaintiff's supplemental state-law claims include two counts of intentional infliction of

---

[1] Doc. no. 18 (Corrected Amended Complaint Filed June 22, 2012).

[2] *Id.* ¶¶ 38-50.

emotional distress,[3] defamation,[4] invasion of privacy,[5] and negligent hiring, training, supervision, and retention.[6]

Originally, plaintiff only filed claims against her former employer, the City of Muscle Shoals, Alabama, and the former Muscle Shoals Library Director, Hannah W. Jeffreys.[7]   In her corrected first amended complaint, plaintiff added two new defendants:  *i.e.*, the Muscle Shoals City Clerk/Treasurer, Ricky Williams; and, the Muscle Shoals Human Resources Director, Elaine Coan.[8]  This case is before the court on defendants' joint motion to dismiss some of the claims asserted against the City of Muscle Shoals, and all claims against Ms. Jeffreys, Mr. Williams, and Ms. Coan.[9]  Upon consideration, this court will grant the motion.  All of plaintiff's claims for punitive damages under federal employment discrimination statutes will be dismissed.  Further, plaintiff will be allowed to proceed with *only* her claims for pregnancy discrimination, retaliation, hostile environment, and interference with her rights under the FMLA against the City.

## I.  LEGAL STANDARDS

---

[3] *Id.* ¶¶ 51-54, and 61-69.

[4] *Id.* ¶¶ 55-57.

[5] *Id.* ¶¶ 58-60

[6] *Id.* ¶ 70-76.

[7] Doc. no. 1 (Complaint).

[8] Doc. no. 18.

[9] Doc. no. 21 (Motion to Dismiss).

Federal Rule of Civil Procedure 12(b) permits a party to move to dismiss a complaint for, among other reasons, "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). This rule must be read together with Rule 8(a), which requires that a pleading contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While that pleading standard does not require "detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 544 U.S. 544, 555 (2007), it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (internal citations omitted).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Bell Atl. Corp. v. Twombly*, 550 U.S. 544,] 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 [(2007)]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (brackets omitted).

*Iqbal*, 556 U.S. at 678 (alterations supplied).

## II. FACTS AS ALLEGED[10]

---

[10] As always is the case in the context of ruling upon a motion to dismiss, the district court must assume the facts set forth in the plaintiff's complaint are true. *See Anza* [*v.*

Plaintiff began employment with working for the City of Muscle Shoals, Alabama, in its police department during April of 2006, but was reassigned to the City's public library as an assistant librarian on November 2, 2010.[11]  On or about April 8, 2011, plaintiff found out that she was pregnant, and informed her employer and Ms. Jeffreys,[12] her immediate supervisor.[13]

On April 21, 2011, plaintiff overheard Ms. Jeffreys expressing "disappointment, disapproval, and dislike of [her] pregnancy."[14]  Specifically, Ms. Jeffreys stated that plaintiff's "pregnancy was embarrassing to her[,] and [that] she did not want to have anything to do with [her]."[15]

Before plaintiff announced her pregnancy, she was not informed of any

---

*Ideal Steel Supply Corp.*], 547 U.S. 451, [453,] 126 S. Ct.[1991,] 1994 [(2006)] (stating that on a motion to dismiss, the court must "accept as true the factual allegations in the amended complaint"); *Marsh v. Butler County*, 268 F.3d 1014, 1023 (11th Cir. 2001) (*en banc*) (setting forth the facts in the case by "[a]ccepting all well-pleaded factual allegations (with reasonable inferences drawn favorably to Plaintiffs) in the complaint as true").  Because we must accept the allegations of plaintiff's complaint as true, what we set out in this opinion as "the facts" for Rule 12(b)(6) purposes may not be the actual facts.

*Williams v. Mohawk Industries, Inc.*, 465 F.3d 1277, 1281 n.1 (11th Cir. 2006) (alterations supplied).

[11] Doc. no. 18 ¶ 14.

[12] *Id.* ¶ 15.

[13] *Id.* ¶ 16.

[14] *Id.* ¶ 17 (alteration supplied).

[15] *Id.* (alterations supplied).  This court speculates that plaintiff was not married on the date that she conceived her child, but can find nothing in the record presently before this court to confirm or refute such speculation.  Even if that were true, it would not justify the librarian's alleged actions and statements.

problems with her performance.[16]   Afterward, however, Ms. Jeffreys began to regularly shout at plaintiff, slam the door in her face, and call her "a bad employee and an embarrassment to the library."[17]   Further, Ms. Jeffreys began complaining about plaintiff's performance, "harassing [her] unmercifully, making [her] work life unbearable, [and] making [her] work environment extremely hostile."[18]

Plaintiff went into Ms. Jeffrey's office on April 27, 2011, and asked to talk with her.[19]   Plaintiff then told Ms. Jeffreys that "it hurt her very much and was very upsetting to her that [Ms.] Jeffreys was telling people . . . ugly things about her and her pregnancy . . . [and] doing things which made [her] work harder."[20]   She also "asked [Ms.] Jeffreys to please stop."[21]

Ms. Jeffreys summoned plaintiff to her office for a meeting on the following day, April 28, 2011, and confirmed that she "had told people that [plaintiff] was an embarrassment because of [her] pregnancy[,] and that she disapproved of and disliked [her] pregnancy."[22]   Ms. Jeffreys also stated that "[plaintiff] should not have gotten pregnant[,] . . . that she should be ashamed[,] . . . [and that] she was going to make life

---

[16] *Id.* ¶ 19.

[17] Doc. no. 18 ¶ 18.

[18] *Id.* ¶ 20 (alterations supplied).

[19] *Id.* ¶ 21.

[20] *Id.* (alterations supplied).

[21] *Id.* (alterations supplied).

[22] *Id.* ¶ 22 (alterations supplied).

miserable for [her]."[23]   Ms. Jeffreys stated that "she would teach [plaintiff] not to get pregnant by extending [her] probationary period," and handed plaintiff a letter that she (Ms. Jeffreys) had signed and dated April 28, 2011, extending plaintiff's probationary period for an additional sixty days.[24]   The letter also stated that plaintiff was insubordinate and had poorly performed the duties of her job position.[25]

One of the requirements of applying for the library manager position when Ms. Jeffreys retired was that the applicant had to be a non-probationary employee.[26] Because plaintiff's probationary period had been extended, she was unable to apply for the position.[27]   The difference in annual salary between the positions of assistant librarian and library manager was roughly $21,000.[28]

After the meeting in which Ms. Jeffreys delivered to plaintiff the letter extending her probationary period, Ms. Jeffreys began a daily practice of accusing plaintiff of insubordination and poor job performance.[29]   She also moved plaintiff's desk and personal belongings to a different area in the main library,[30] and would not

---

[23] Doc. no. 18 ¶ 22 (alterations supplied).

[24] *Id.* (alterations supplied).

[25] *Id.*

[26] *Id.* ¶ 23.

[27] *Id.*

[28] *Id.*

[29] Doc. no. 18 ¶ 24.

[30] *Id.* ¶ 25.

allow anyone to assist her.[31]  Both changes made plaintiff's work more difficult.[32]

Plaintiff reported Ms. Jeffreys's behavior to the City's Civil Service Board on or about May 2, 2011, after which Ms. Jeffreys "became even more hostile,"[33] and "made [plaintiff's] work life even more miserable."[34]  Specifically, Ms. Jeffreys told plaintiff that she was going to ensure that she was fired, which frightened plaintiff because she needed the medical insurance benefits and income provided by her position with the library.[35]  But, Ms. Jeffreys's hostility and constant ridicule of plaintiff's pregnancy interfered with plaintiff's ability to perform the duties of her job.[36]

On May 17, 2011, plaintiff gave Ms. Jeffreys a doctor's note containing lifting restrictions.[37]  In turn, Ms. Jeffreys "got mad and told [plaintiff] that [she] would do exactly what [Ms.] Jeffreys told her [to] do regardless of what [plaintiff's] doctor told her to do or quit."[38]  Additionally, Ms. Jeffreys revised plaintiff's work schedule in a manner that made her work more difficult.[39]

---

[31] *Id.* ¶ 26.

[32] *Id.* ¶ 25-26.

[33] *Id.* ¶ 28.

[34] *Id.* ¶ 27 (alteration supplied).

[35] Doc. no. 18 ¶ 28.

[36] *Id.*

[37] *Id.* ¶ 29.

[38] *Id.* (alterations supplied).

[39] *Id.* ¶ 30.

Plaintiff filed her initial Charge of Discrimination against the City with the Equal Employment Opportunity Commission (EEOC) on May 18, 2011,[40] after which she was subjected to "extreme stress, mental and emotional anguish, ridicule, and humiliation during the course of her work."[41]  Further, Ms. Jeffreys began to tell plaintiff "that [she] did not know what she was doing [and] that [she] did not know how to do her job, and made [her] feel diminished and worthless as a person all the while telling [her that] she was an embarrassment to the library and the City because she was pregnant."[42]

Plaintiff began experiencing complications with her pregnancy on June 25, 2011,  and was initially admitted to the hospital in Florence,[43] but she was later transferred to Huntsville Hospital in Madison County, where she was restricted to bed rest and required to remain flat on her back until her child was born.[44]  Mr. Ricky Williams, the City Clerk/Treasurer, and Ms. Elaine Coan, the City's Human Resources Director, visited plaintiff at the hospital and told her that the City was going to allow her FMLA leave run *consecutively* to her accrued sick leave and

---

[40] *Id.* ¶ 31.  Although the complaint states that plaintiff filed her initial EEOC charge on May 18, 2011, the EEOC charges attached as exhibits to her complaint are actually dated May 23 and August 10, 2011.

[41] Doc. no. 18 ¶ 32.

[42] *Id.* (alterations supplied).

[43] *Id.* ¶ 33.

[44] *Id.* ¶ 34.

accrued vacation time — concessions that, under the circumstances, would have been extremely helpful to plaintiff.[45]   Following plaintiff's release from Huntsville Hospital, however, Mr. Williams and Ms. Coan informed her that the City had changed its mind, and that her FMLA leave would run *concurrently* with her accrued sick leave and accrued vacation time.[46]   At the time, the City knew that plaintiff's son had been born prematurely, and that the infant had to remain in the hospital's prenatal care unit,[47] and that plaintiff had no more FMLA leave, accrued sick leave, or accrued vacation time.[48]   Nevertheless, the City made clear that, if plaintiff did not report to work after she was released from Huntsville Hospital, she would be classified as absent from work without excuse or protection.[49]

## III. DISCUSSION

### A.   Plaintiff's Claims Against the City

#### 1.   Punitive damages

Plaintiff seeks punitive damages against the City in connection with her claims for pregnancy discrimination, retaliation, hostile work environment, and interference with her rights under the FMLA.[50]   In response, defendants contend that punitive

---

[45] *Id.* ¶ 35.

[46] *Id.* ¶ 36.

[47] Doc. no. 18 ¶ 36.

[48] *Id.* ¶ 37.

[49] *Id.*

[50] *Id.* ¶ 38-50.

damages are *never* recoverable:  (1) for violations of the FMLA as a matter of law;[51]

(2) against governmental entities for violations of the Pregnancy Discrimination Act,

42 U.S.C. § 2000e(k), in accordance with 42 U.S.C. § 1981a(b)(1);[52] and (3) against

governmental entities for violations of Title VII, 42 U.S.C. § 2000e *et seq.*, once

again in accordance with § 1981a(b)(1).[53]  As those claims run afoul of the black-

letter law of this Circuit, and as plaintiff admits that they are due to be dismissed,[54]

this court will grant the motion to dismiss her claims for punitive damages.

**2.    § 1983 claim**

Plaintiff's corrected first amended complaint cites 42 U.S.C. § 1983 only twice,

---

[51] The "FMLA does not provide for punitive damages."  *Godwin v. Rheem Mfg. Co.*, 15 F. Supp. 2d 1197 (M.D. Ala. 1998) (citing *McAnnally v. Win South Molded Products, Inc.*, 912 F. Supp 512, 513 (N.D. Ala. 1996)).

[52] 42 U.S.C. § 1981a(b)(1) governs the recoverability of punitive damages in cases of intentional discrimination in employment and provides as follows:

> A complaining party may recover punitive damages under this section against a respondent (*other than a government, governmental agency or political subdivision*) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.

(emphasis supplied).  *See also Erickson v. Hunter*, 932 F. Supp. 1380, 1385 (M.D. Fla. 1996) ("Punitive damages are available in discrimination actions, provided they are not against the government or a governmental agency."); *Clark v. City of Macon*, 860 F. Supp. 1545, 1552 (M.D. Ga. 1994) ("With respect to damages, the court notes that 42 U.S.C. § 1981a(b)(1) does not allow plaintiff to recover punitive damages for violation of Title VII by a governmental agency or subdivision.").

[53] *See* footnote 51.

[54] Doc. no. 30 (Response in Opposition to Motion to Dismiss), at 4-6.

both times in the section titled "Jurisdiction and Venue."[55]  More importantly, the

words "free speech" and "First Amendment" are mentioned nowhere within the four

corners of that pleading.  Nevertheless, plaintiff maintains that she "has stated a claim

under 42 U.S.C. § 1983 for denial of free speech under the First Amendment as part

of her retaliation claim and hostile work environment claim."[56]  Moreover, in the

event that this court finds that plaintiff failed to state a § 1983 claim for violation of

those constitutional rights, she asks "for leave to amend her Complaint in an effort

to replead her claims additionally under § 1983."[57]

      While defendants have devoted thirteen pages to divining the bases for

plaintiff's § 1983 claim and describing the reasons those bases are insufficient,[58] this

court is unwilling to go that far.  Plaintiff's complaint does not contain a "short and

plain statement of the claim" as required by Federal Rule of Civil Procedure 8(a)(2).

It only amounts to an example of an "unadorned, the-defendant-unlawfully-harmed-

---

      [55] Doc. no. 18 ¶ 1 ("This court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343 and 1367; 42 U.S.C. §1983; 42 U.S.C. § 1981(a); and, Title VII of the Civil Rights Act of 1964 ('Title VII') 42 U.S.C. §2000e *et seq.*, as amended by the Civil Rights Act of 1991, which prohibits discrimination in employment."); *id.* ¶ 3 ("This action seeks declaratory, injunctive, and equitable relief, compensatory damages, costs and attorney's fees for the deprivation of rights suffered by Thompson caused by Defendant City of Muscle Shoals, Alabama ('the City') and is brought pursuant to 28 U.S.C. §§ 1331, 1343 and 1367; 42 U.S.C. §1983; 42 U.S.C. § 1981(a); and, Title VII of the Civil Rights Act of 1964 ('Title VII') 42 U.S.C. §2000e et seq., as amended by the Civil Rights Act of 1991, which prohibits discrimination in employment.")

      [56] Doc. no. 30, at 6.

      [57] *Id.* at 7 (citing *Mack v. Wilcox County Com'n*, 2009 WL 4884310, at *6 (S.D. Ala. 2009)).

      [58] Doc. no. 32 (Reply in Support of Motion to Dismiss), at 2-15.

me accusation," which was held insufficient to survive a motion to dismiss in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). Thus, plaintiff's § 1983 claim — if it could charitably be concluded that plaintiff's attorney, in fact, alleged such a claim — is due to be dismissed.

In support of the request made in plaintiff's brief, asking for leave to amend her complaint yet again, plaintiff cites *Mack v. Wilcox County Commission*, 2009 WL 4884310, at *6 (S.D. Ala. 2009). That case has little in common with this litigation. In *Mack*, a plaintiff proceeding *pro se* accused the Wilcox County Commission of depriving him of his equality of contract in violation of § 1981 and § 1981(a), and of retaliating against him for complaining to the EEOC and for opposing its discriminatory business practices in violation of Title VII and § 1981. *Id.* at *2-3. However, the plaintiff mistakenly proceeded under 42 U.S.C. § 1981 in lieu of § 1983.[59] *Id.* at *15. In contrast, plaintiff in the present case is allegedly represented by an attorney, who is expected to be familiar with federal pleading standards and with the law that governs plaintiff's claims.

Moreover, when affording the plaintiff an opportunity to cure, the *Mack* court noted that plaintiffs generally needed to file a motion to do so:

---

[59] Although racial employment discrimination and retaliation are actionable under § 1981, a claim against *state* actors for violations of § 1981 can only be filed under § 1983. *See, e.g., Bryant v. Jones*, 575 F. 3d 1281, 1288, n.1(11th Cir. 2009); *Butts v. County of Volusia*, 222 F.3d 891, 894-95 (11th Cir. 2000).

Having determined that Defendant's Motion to Dismiss Plaintiff's Complaint is due to be granted, the question becomes whether the dismissal should take effect at this time or whether Plaintiff should be given an opportunity to replead his claims. The law in this Circuit is clear that "[o]rdinarily, a party must be given at least one opportunity to amend before the district court dismisses the complaint." *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005). Plaintiff has not requested such an opportunity here. *That omission would be fatal if Plaintiff were represented by counsel. See Wagner v. Daewoo Heavy Industries America Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) *("A district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court.")*. However, the Eleventh Circuit has never announced whether the *Wagner* rule applies to claims brought by a *pro se* plaintiff, and the Court will assume for purposes of this Order that it does not. *See Wagner*, 314 F.3d at 542 n.1 ("In this opinion, we decide and intimate nothing about a party proceeding *pro se*."). Accordingly, the undersigned recommends that Plaintiff, who is proceeding *pro se*, be granted leave to amend his Complaint, in an effort to replead his § 1981 claims under 42 U.S.C. § 1983. *See Pears v. Mobile County*, 2009 U.S. Dist. LEXIS 31310 (S.D. Ala., April 13, 2009) (court granted dismissal of the plaintiff's § 1981 claims against the county and the police department, and held that the plaintiff could pursue a § 1983 claim against the county and the police department premised on alleged violations of § 1981 by these entities.)[.]

*Id.* at *17-18 (emphasis supplied).

After already being granted leave to amend and correct her complaint once before,[60] plaintiff has requested leave to amend her complaint for a second time, but not by motion. Instead, plaintiff has only done so *in pleadings filed in opposition to*

---

[60] *See* doc. nos. 15-17.

*defendants' motion to dismiss.*[61]   Plaintiff's request does not comply with Federal

Rule of Civil Procedure 7(b), which provides:

> (1)   In General.  A request for a court order must be made by motion.
> The motion must:
>
>> (A)   be in writing unless made during a hearing or trial;
>>
>> (B)   state with particularity the grounds for seeking the
>> order; and
>>
>> (C)   state the relief sought.
>
> (2)   Form.  The rules governing captions and other matters of form in
> pleadings apply to motions and other papers.

As plaintiff has not made a good-faith effort to comply with either the pleading

standard of Rule 8(a)(2), or with the motion standard of Rule 7(b), this court sees no

reason to depart from the rule requiring a represented plaintiff to file a motion for

leave to amend her complaint.  As a result, it will deny the request.

### 3.   Defamation, invasion of privacy, and intentional infliction of emotional distress

Further, plaintiff asserts claims against the City for defamation and invasion

of privacy,[62] and possibly for intentional infliction of emotional distress.[63]   In

---

[61] Doc. no. 30, at 7, 18.

[62] Doc. no. 18 ¶ 55-60.

[63] Specifically, plaintiff's statement of facts states that, "[u]nder the circumstances, [Mr.] Williams's, [Ms.] Coan's, *and the City's* reversal of [their] earlier decision was malicious, intentional, and egregious[,] and can be more accurately characterized as a mental assault on [plaintiff]." *Id.* at ¶ 36 (alterations and emphasis supplied).  However, neither of her two claims for intentional infliction of emotional distress, including the one arising from that reversal, mention the

response, defendants argue that Alabama Code § 11-47-190 bars those claims by restricting the vicarious liability of municipalities to claims based on negligence.  In relevant part, the cited statute provides that:

> No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, *unless such injury or wrong was done or suffered through the neglect, carelessness or unskillfulness* of some agent, officer or employee of the municipality engaged in work therefor and while acting in the line of his or her duty[.]

Ala. Code § 11-47-190 (alteration and emphasis supplied).  *See also Roberts v. City of Geneva*, 114 F. Supp. 2d 1199, 1213 (M.D. Ala. 2000) (observing that § 11-47-190 limits a city's liability to "negligence-based claims only"); *City of Prattville v. Post*, 831 So. 2d 622, 627 n.7 (Ala. Civ. App. 2002) (observing that Ala. Code § 11-47-190 "limits monetary damages against a municipality to those claims alleging negligence").

Because the Alabama Supreme Court has defined defamation, invasion of privacy, and intentional infliction of emotional distress as "intentional" torts, none of plaintiff's three claims are based on negligence.  *See Surrency v. Harbison*, 489 So. 2d 1097, 1101 (Ala. 1986) (defamation); *Cottrell v. National Collegiate Athletic Ass'n*, 975 So. 2d 306, 348 (Ala. 2007) (invasion of privacy); *Serra Chevrolet, Inc.*

---

City.  *See id.* ¶ 51-54, 61-69.  Thus, this court is skeptical that plaintiff has stated a claim for intentional infliction of emotional distress against the City at all.  However, assuming that the claim is *not* otherwise barred by the deficiency of her complaint, it *is* barred on the same grounds as her claims for defamation and invasion of privacy.  As a result, the following discussion will include all three claims.

*v. Reylander*, 975 So. 2d 909, 910 (Ala. 2007) (intentional infliction of emotional distress).

Instead of attempting to refute defendants' authority, plaintiff's response in opposition to defendants' motion to dismiss restates the definition of privacy and recites examples of activities entitled to privacy protection.[64]  As plaintiff offers no substantive opposition to defendants' arguments, this court will grant the motion.

### 4.    Negligent hiring, training, supervision, and retention

Plaintiff also asserts a claim against the City for negligent hiring, training, supervision, and retention.[65]  In response, defendants contend that Alabama Code § 11-47-190 also bars those claims by restricting the vicarious liability of municipalities to claims based on *respondeat superior*.

While the liability of a *private* employer can be predicated on the doctrine of vicarious liability, the liability of a *municipal* employer "under Section 11-47-190 is based on the doctrine of *respondeat superior*."  *Ott v. City of Mobile*, 169 F. Supp. 2d 1301, 1314 (S.D. Ala. 2001) (citing *City of Lanett v. Tomlinson*, 659 So. 2d 68, 70 (Ala. 1995)).  Before a city can be liable under that doctrine, one of its employees must be liable for a tort.  *Id.*

Under Alabama law, the tort of negligent supervision or training requires the

---

[64] Doc. no. 30, at 17-18.

[65] Doc. no.18 ¶ 70-76.

existence of a master-servant relationship between the employee and his supervisor. *See Ott*, 169 F. Supp. 2d at 1314.   As a result, a plaintiff who seeks to sue a municipality for such a tort "must show that Alabama law recognizes a cause of action against a supervisory employee for the negligent training or supervision of a subordinate." *Id.*

However, a supervisor "is not the master of a subordinate, nor is the subordinate the servant of the supervisor; rather, as Alabama cases make plain, the status of 'master' is restricted to one who is actually or essentially the employer of the servant." *Ott*, 169 F. Supp. 2d at 1314 (citing *Tyson Foods, Inc. v. Stevens*, 783 So. 2d 804, 806 (Ala. 2000); *Hauseman v. University of Ala. Health Servs. Found.*, 793 So. 2d 730, 732 (Ala. 2000)).   Thus, "no such cause of action exists" against a municipality.   *Id*.

The federal courts in Alabama have consistently followed the holding in *Ott. See, e.g.*, *Borton v. City of Dothan*, 734 F. Supp. 2d 1237, 1258-59 (M.D. Ala. 2010) ("Ms. Borton has not demonstrated that Alabama law recognizes her cause of action for negligent training and supervision against the City, and the weight of authority does not support her claim."); *Hamilton v. City of Jackson*, 508 F. Supp. 2d 1045, 1058 (S.D. Ala. 2007) ("Police Chief Burge cannot be liable for negligent training or supervision because no such cause of action exists under Alabama law.   Moreover,

this claim must also fail against the City of Jackson since its liability, if any, flows derivatively from its employee."); *Cornelius v. City of Andalusia*, 2007 WL 4224036, at *5 (S.D. Ala.,  Nov. 28, 2007) ("Alabama courts have not recognized a cause of action against a municipality for negligent training."); *Styron v. City of Foley*, 2005 WL 3098926, at *4-5 (S.D. Ala., Nov. 18, 2005) ("Alabama does not recognize an action against a municipality for negligent hiring, supervising, or training.").

In response, plaintiff cites a number of cases that recognize those torts against employers and supervisors in the *private*, as opposed to the *public*, sector.[66]  As plaintiff once again offers no meaningful rebuttal to defendants' arguments, this court will dismiss the claim.

## B.    Plaintiff's Claims Against Ms. Jeffreys, Ms. Coan, and Mr. Williams

### 1.    Intentional infliction of emotional distress

Plaintiff asserts claims against the three individual defendants for intentional infliction of emotional distress.[67]  In response, defendants contend that plaintiff has not satisfied the standard for stating that claim.

Under Alabama law, the elements of the tort of intentional infliction or emotional distress, which is also called the tort of outrage, "are met only in rare

---

[66] Doc. no. 30, at 12-17 (citing, *e.g.*, Big *B, Inc. v. Cottingham*, 634 So. 2d 999 (Ala. 1993); *Patterson v. Augat Wiring Systems, Inc.*, 944 F. Supp. 1509, 1528-29 (M.D. Ala. 1996); *Machen v. Childersburg Bancorporation, Inc.*, 761 So. 2d 981, 986-88 (Ala. 1999)*; Mardis v. Robbins Tire & Rubber Co.*, 669 So. 2d 885, 889-90 (Ala. 1995)).

[67] Doc. no.18 ¶ 51-54, 61-69.

circumstances." *Barton v. American Red Cross*, 829 F. Supp. 1290, 1309 (M.D. Ala. 1993).   To state a claim, the conduct of the defendant must be "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *American Road Service Co. v. Inmon*, 394 So.2d 361, 365 (Ala. 1980).

"The Alabama Supreme Court 'has applied the stringent *Inmon* test rather strictly.'"   *Saville v. Houston County Healthcare Auth.*, 852 F. Supp. 1512, 1541 (M.D. Ala. 1994) (citing *Continental Cas. Ins. Co. v. McDonald*, 567 So.2d 1208, 1211 (Ala. 1990)).   In fact, it "has recognized the tort of outrage in only three areas: wrongful conduct within the context of family burial; an insurance agent coercing an insured into settling an insurance claim; and egregious sexual harassment." *Hamilton v. City of Jackson*, 508 F. Supp. 2d 1045, 1060 (S.D. Ala. 2007); *see also Styron v. City of Foley*, 2005 WL 3098926, at *6 (S.D. Ala. November 18, 2005) (same).

When responding to defendants' motion to dismiss, plaintiff's attorney states that:

> As noted by the Defendants in their brief, the Alabama Supreme Court has recently observed that the tort of outrage may be viable in some other circumstances then the three noted in its previous opinions. *O'Rear v. B.H.*, 69 So. 2d 106 (Ala. 2011).   The facts of this case certainly fall into another type of circumstance which supports a claim of the tort of outrage.[68]

---

[68] Doc. no. 30, at 10.

The *O'Rear* case cited by plaintiff's attorney does not support an attempt to lower the bar on stating a claim of outrage.  In that case, the Alabama Supreme Court affirmed an outrage  judgment against a family physician asked to counsel a teenaged boy about the stress of his parents' divorce.  *Id.* at 112.  Instead of counseling the boy, however, the physician provided him with addictive prescription drugs in exchange for homosexual sex.  That occurred over a number of years, which caused the boy to develop an addiction.  *Id.*  The Alabama Supreme Court noted that the tort of outrage remained "an extremely limited cause of action," and that a *consensual* sexual relationship between a patient and a social worker or physician would be insufficient to state a triable claim.  *Id.* at 118 (citing *Perkins v. Dean*, 570 So. 2d 1217 (Ala. 1990); *Gunter v. Huddle*, 724 So. 2d 544 (Ala. Civ. App. 1998)).

In support of their motion, defendants cite *Thrasher v. Ivan Leonard Chevrolet, Inc.*, 195 F. Supp. 2d 1314 (N.D. Ala. 2002), a highly similar case of pregnancy-based employment discrimination that did not meet the standard for outrage as a matter of law.  *Id.* at 1319.  The plaintiff's complaint in *Thrasher* contained the following allegations:

> On October 9, 2000, Plaintiff told Bill Karr, the manager of the parts department, that she was pregnant; whereupon, Karr told her that she was useless to him and that she would not be able to do her job. Plaintiff told Karr that her pregnancy would not cause her to be unable to do her job and then left crying.  She was so upset by the comments that she called her treating physician.

20

After Plaintiff told Karr she was pregnant, she noticed that Karr treated her in a hostile manner. He would barely speak to her, and when he did his tone was harsh and demeaning. Plaintiff complained to Tommy Busby, the drivers' supervisor, and he told her that there was nothing she could do about it. She became stressed and afraid that she would be terminated.

Plaintiff also complains that Karr told her that she would be required to clock out as soon as she returned from her run, which meant that she would be required to clock out before she had worked an eight hour shift. She contends that this change in her work schedule deprived her of the ability to earn overtime, although the week of the change Plaintiff's time card shows that she worked an hour and a half of overtime.

Karr told Plaintiff that she would have to bring a doctor's excuse for every time she missed work to go to the doctor during her pregnancy. Doctors' excuses were not required for other parts department employees for absences of a single day.

On October 17, 2000, exactly eight (8) days after Plaintiff told Karr she was pregnant, Karr fired Plaintiff. Terry Screws, the assistant manager of the parts department, asked Plaintiff to come into Karr's office. Plaintiff testified that she walked into the office, saw Karr sitting at his desk, and asked him if she was fired. Karr nodded his head in the affirmative. Plaintiff said to Karr, "You're firing me because I'm pregnant," to which Karr did not respond. Screws asked Plaintiff to leave quietly. Plaintiff picked up her check and COBRA information and quietly left the premises. She alleges devastation due to the subject events.

On October 20, 2002, Plaintiff went to the Emergency Room of Bessemer Carraway, where she learned that her baby no longer had a heartbeat. Her pregnancy terminated shortly thereafter.

The allegations in *Thrasher* closely resemble those in this case. Plaintiff's outrage claim against Ms. Jeffreys contains the following allegations:

51. Jeffreys's intentional, reckless, and egregious behavior toward and against Thompson caused Thompson severe emotional and mental anguish arguably for the purpose of getting Thompson to voluntarily terminate her employment.

52. Jeffreys's intentional, reckless, and egregious behavior toward and against Thompson caused Thompson severe emotional and mental anguish and caused and/or contributed to the onset of Thompson's serious complications with her pregnancy.

53. Jeffreys took her victim, Thompson, as she found her, pregnant, and Intentionally, recklessly, and egregiously imposed upon Thompson mental strain and emotional distress so severe that no reasonable person under the circumstances should be expected to endure it. Jeffreys threatened Thompson's ability to earn an income with which to support the baby Thompson was expecting; demeaned Thompson to others and made Thompson feel worthless; defamed Thompson's reputation and placed Thompson in a false light in the eyes of others; threatened Thompson's job security; and, caused Thompson to not be able to compete for a promotion at work. Thompson suffered complications with her pregnancy delivering a premature baby who weighed only 2 lbs. 9 oz. and was only 14.25" in length. Thompson's baby was born on September 2, 2011, but was not released to go home until November 14, 2011. Thompson's baby himself had and has complications. Jeffreys's actions toward and against Thompson were so severe that it cannot be said that such were not, as a matter of law, in violation of public policy and so outrageous in character and extreme in degree as to go beyond all possible bounds of decency and are not intolerable in our society.

54. Thompson has suffered and continues to suffer severe mental and emotional anguish; monetary damages; and, other damages as a direct and proximate result of Jeffreys's intentional infliction of emotional distress for which Thompson is due to recover compensatory and punitive damages from Jeffreys in such amount as the jury may deem appropriate.[69]

---

[69] Doc. no.18 ¶ 51-54 (alterations supplied).

Although the plaintiff in *Thrasher* and the plaintiff in the present case both alleged that they suffered pregnancy-based workplace harassment that (1) was hurtful and demeaning, (2) was intended to terminate their employment, and (3) may have caused or contributed to their complications, the allegations in *Thrasher* were more egregious than the allegations here, because the *Thrasher* plaintiff was actually fired and ultimately lost her child.   In contrast, the plaintiff in this case was neither terminated nor driven to quit; and, even though she suffered complications with her pregnancy, she still delivered a living child.   Thus, if the *Thrasher* court held that the plaintiff in that case did not state a viable claim for outrage as a matter of law, then it would not be consistent for this court to hold that the present plaintiff stated a cognizable claim on the basis of less egregious facts.

In addition, it should be noted that plaintiff's outrage claim against Ms. Coan and Mr. Williams contains the following allegations:

> 61.   Thompson's condition was so serious that Thompson was transferred from Eliza Coffee Memorial Hospital in Florence, Alabama to the neo-natal care unit at Huntsville Hospital in Huntsville, Alabama, some seventy miles from Muscle Shoals.
>
> 62.   Ricky Williams ("Williams"), City Clerk/Treasurer, went to Thompson's hospital room at Huntsville Hospital with Elaine Coan ("Coan"), the City's Assistant City Clerk/Human Resources Director/Safety Coordinator, before Thompson's son was born on September 2, 2011.  Knowing that Thompson had to lie flat on her bed and could not move for fear of losing her baby, Williams and Coan told Thompson that she was going to be allowed to let her FMLA leave run

consecutively with her accrued paid sick leave time and her accrued paid vacation time, which, under the circumstances would have been extremely helpful to Thompson.

63.   Thompson was released from Huntsville Hospital but her 2 lbs. 9 oz. son was experiencing complications and had to remain in Huntsville Hospital until November 14, 2011.

64.   Immediately upon Thompson's release from Huntsville Hospital, Williams and Coan, knowing that Thompson's premature infant son had to remain at Huntsville Hospital because he had been born so prematurely, informed Thompson that they had changed their mind and they were going to make Thompson's FMLA leave time run concurrently with her accrued paid sick leave time and her accrued paid vacation time.

65.   When Williams and Coan informed Thompson that they had changed their minds and, directly contrary to what they had previously assured Thompson, informed Thompson that Thompson was not going to be allowed to run her accrued paid sick leave and vacation leave consecutively with her FMLA leave time, Williams and Coan knew that Thompson had no more accrued paid sick leave time; no more accrued paid vacation leave time; and, no more FMLA job protected leave time. Williams and Coan made it clear to Thompson that if Thompson did not report to work after she was released from Huntsville Hospital, she would be absent from work without excuse and absent without any job protection of any kind whatsoever.  At that point in time, Thompson's 2 lbs. 9 oz. son lay in critical condition in Huntsville Hospital, some seventy miles from Muscle Shoals.

66.   Under the circumstances, Williams's and Coan's reversal of decision was malicious, intentional, and egregious and can be more accurately characterized as a mental assault on Thompson which was outrageous, so severe that no reasonable person could be expected to endure it, and such behavior should not be tolerated in a civilized society.  Williams's and Coan's actions toward and against Thompson were so severe and so outrageous in character and extreme in degree as to go beyond all possible bounds of decency and are not intolerable in

our society.[70]

67.  Williams's and Coan's intentional, reckless, and egregious behavior toward and against Thompson caused Thompson severe emotional and mental anguish arguably for the purpose of getting Thompson to voluntarily terminate her employment.

68.  Williams and Coan took their victim, Thompson, as she found her, pregnant and with a 2 lbs. 9 oz. premature son in critical condition in Huntsville Hospital some seventy miles away,[71] and intentionally, recklessly, and egregiously imposed upon Thompson mental strain and emotional distress so severe that no reasonable person under the circumstances should be expected to endure it.

69.  Thompson has suffered and continues to suffer severe mental and emotional anguish; monetary damages; and, other damages as a direct and proximate result of Williamm's and Coan's intentional infliction of emotional distress for which Thompson is due to recover compensatory and punitive damages from Williams and Coan in such amount as the jury may deem appropriate.

Nowhere in plaintiff's three-page recitation of allegations does she state that

Mr. Williams and Ms. Coan's reversal violated a law or rule of conduct.   Instead of

likening her allegations to those in *Thomas* and *O'Rear*, plaintiff copies verbatim

from her complaint,[72] attaches an EEOC guidance letter on investigating requests for

---

[70] Based on the context of the complaint, this court will assume that plaintiff actually meant to say, ". . . that are intolerable" or ". . . that are not tolerable in our society."

[71] Although this court "must assume the facts set forth in the plaintiff's complaint are true" at this point in the proceedings, *see Williams v. Mohawk Industries, Inc.*, 465 F.3d 1277, 1281 n.1 (11th Cir. 2006) (internal citations omitted), it is impossible for plaintiff to simultaneously be pregnant and have the son with whom she is pregnant be seventy miles away.  Based on the allegations in ¶ 65 of her complaint, this court will accept as true that plaintiff was not pregnant, but that she did have a premature son at the time when Mr. Williams and Ms. Coan reversed their decision.

[72] *Compare, e.g., id.* ¶ 34-37; doc. no. 30, at 8-9.

25

medical leave,[73] and cites a case on threats of discharge,[74] none of which shed light on the standard for claims of outrage.  Given the stark contrast between the circumstances described in *Thomas* and *O'Rear* and the allegations of the present case, as well as the conspicuous absence of any relevant authority in the opposition to defendants' motion to dismiss, this court holds that plaintiff's outrage claim is not sufficient as a matter of law.

## IV. CONCLUSION

For the reasons explained above, this court hereby GRANTS defendants' motion.  As plaintiff has no remaining claims against Ms. Jeffreys, Mr. Williams, and Ms. Coan, those defendants are DISMISSED.  In accordance with the terms of this order, plaintiff may proceed with *only* her claims for pregnancy discrimination, retaliation, hostile environment, and interference with her rights under the FMLA against the City, and *only* without seeking punitive damages.

This court hereby dissolves the stay previously entered in this action pending resolution of the motion to dismiss.[75]  The parties are DIRECTED to resume the discovery process, consistent with the Federal Rules of Civil Procedure, as expeditiously as is practicable.

---

[73] Doc. no. 30, at 11 (citing Exhibit 1).

[74] *Id.* (citing *Cassidy v. Spectrum Rents*, 1996 WL 870744, at *2, 5-6 (E.D. Tenn. 1996)).

[75] Doc. no. 13; doc. no. 27.

DONE and ORDERED this 9th day of October, 2012.

United States District Judge